IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KERI SUE PADDOCK, in her individual capacity and as next friend for MASON BEIGHTOL, LAURIE BOYLE, in her individual capacity and as next friend for BRIDGET BOYLE, HOLLY MCCULLOGH, in her individual capacity and as next friend for WYATT MCCULLOGH, MICHELLE DEL VALLE, in her individual capacity and as next friend for NATHAN GHENT, CHEYENNE MOSES, in her individual capacity and as next friend for T.M., a minor, JULIA ROER, in her individual capacity and as next friend for CHEYENNE ROER, SANDRA BLANCHETTE, in her individual capacity and as next friend for JOSIAH BLANCHETTE, TARYN ANTHONY, in her individual capacity and as next friend for AUREN ANTHONY, CHRISTINA POLANOWSKI, in her individual capacity and as next friend for MICHAEL POLANOWSKI,<br><br>          Plaintiffs,<br><br>v.<br><br>NOVARTIS PHARMACEUTICALS CORPORATION, a Delaware Corporation, and JOHN DOES 1-100,<br><br>          Defendants. | Civil Action No. 25-407-JLH-SRF |

## REPORT AND RECOMMENDATION[1]

---

[1] A motion for remand is considered a dispositive motion and is therefore governed by Fed. R. Civ. P. 72(b). *Agincourt Gaming LLC v. Zynga Inc.*, C.A. No. 11-720-RGA, 2013 WL 3936508, at *2 (D. Del. July 29, 2013) (citing *In re U.S. Healthcare*, 159 F.3d 142, 145 (3d Cir. 1998)); *see also Drit LP v. Glaxo Grp. Ltd.*, C.A. No. 21-844-LPS-CJB, 2022 WL 605123, at *1 n.1 (D. Del. Feb. 18, 2022).

Pending before the court in this personal injury action is a motion to remand the case to the Superior Court of Delaware, filed by plaintiffs Keri Sue Paddock, Mason Beightol, Laurie Boyle, Bridget Boyle, Holly McCullogh, Wyatt McCullogh, Michelle Del Valle, Zachary Moss, Tove Ghent, Nathan Ghent, Cheyenne Moses, T.M., Julia Roer, Cheyenne Roer, Sandra Blanchette, Josiah Blanchette, Taryn Anthony, Auren Anthony, Christina Polanowski, and Michael Polanowski (collectively, "Plaintiffs").[2] (D.I. 7) For the following reasons, I recommend that the court DENY the motion to remand.

## I. BACKGROUND

Plaintiffs brought this suit in the Superior Court of Delaware on March 31, 2025, alleging that defendant Novartis Pharmaceutical Corporation ("Defendant")[3] wrongfully promoted the off-label use of terbutaline, an asthma drug, to treat preterm labor in pregnant women. (D.I. 1-1) Plaintiffs are mothers who took Defendant's terbutaline product, Brethine®, during pregnancy to treat preterm labor, and their children, who developed autism allegedly caused by their prenatal exposure to terbutaline. (*Id.* at ¶ 38) Plaintiffs bring causes of action against Defendant for negligence, negligent misrepresentation, intentional misrepresentation, and concealment. (*Id.* at ¶¶ 39-69)

Defendant removed the case to this court on April 1, 2025 based on diversity jurisdiction under 28 U.S.C. §§ 1332(a) and 1441(a). (D.I. 1 at ¶ 15) There is no dispute that Defendant, a Delaware corporation with its principal place of business in New Jersey, removed the case prior to service of the complaint. (*Id.* at ¶ 2; D.I. 8-1 at ¶ 5)

---

[2] The briefing associated with the pending motion is found at D.I. 8, D.I. 17, and D.I. 18.
[3] Although Plaintiffs include "John Does 1-100" in the case caption, their opening brief states that "there is only one defendant in this case." (D.I. 8 at 15)

Plaintiffs Michelle Del Valle and Zachary Moss also sued the same Defendant for the same injuries in California Superior Court on April 19, 2024, and Defendant removed the action to the Northern District of California before being served with the complaint. *Del Valle v. Novartis Pharms. Corp.*, C.A. No. 24-2420-JD, D.I. 1 (N.D. Cal. Apr. 23, 2024). After the case was removed to federal court, the plaintiffs moved to voluntarily dismiss the case without prejudice and then filed another civil action in California Superior Court, prompting the defendants in that action to file another notice of removal to the Northern District of California. *Id.*, D.I. 21; *Del Valle v. Regents of the Univ. of Cal.*, C.A. No. 24-3331, D.I. 1 (N.D. Cal. June 3, 2024). The second action was closed after the parties jointly moved to dismiss the case without prejudice. *Del Valle v. Regents of the Univ. of Cal.*, C.A. No. 24-3331, D.I. 47 (N.D. Cal. Aug. 2, 2024).

A different group of four plaintiffs filed a civil action against Defendant in Delaware Superior Court on February 28, 2025 that similarly raised fraud and negligence-based claims for Defendant's alleged promotion of terbutaline to treat preterm labor in pregnant women. *Higgins et al. v. Novartis Pharms. Corp.*, C.A. No. 25-247-MN, D.I. 1-1 (D. Del. Mar. 5, 2025) ("*Higgins*"). Defendant removed the *Higgins* case to this court on March 5, 2025, and the plaintiffs filed a motion to remand. (*Id.*; D.I. 12) The court concluded that removal was proper and denied the motion to remand. (D.I. 18); *Higgins v. Novartis Pharms. Corp.*, C.A. No. 25-247-MN, 2025 WL 1397045, at *1 (D. Del. May 14, 2025).

## II.    LEGAL STANDARD

A federal court must remand a removed case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). In the Third Circuit, "[i]t is settled that the removal statutes are to be strictly construed against removal

3

and all doubts should be resolved in favor of remand." *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987) (citing *Abels v. State Farm Fire & Casualty Co.*, 770 F.2d 26, 29 (3d Cir. 1985)). The party seeking removal bears the burden of demonstrating that removal is proper. *See id.*; *Zoren v. Genesis Energy, L.P.*, 195 F. Supp. 2d 598, 602 (D. Del. 2002).

## III. DISCUSSION

Plaintiffs contend that this case should be remanded for two reasons. First, Plaintiffs argue that the forum-defendant rule bars removal of this action because Defendant is a resident of the forum state. (D.I. 8 at 9-17) Second, Plaintiffs allege that complete diversity does not exist because two Plaintiffs and Defendant are residents of the same state. (*Id.* at 17-21) The court addresses each argument in turn.

### A. The Forum-Defendant Rule and Snap Removal

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district . . . embracing the place where such action is pending." 28 U.S.C. § 1441(a). However, the "forum-defendant rule" provides that an action removed solely based on diversity jurisdiction may not be removed if any of the parties "properly joined and served as defendants" is a citizen of the State where the action was filed. 28 U.S.C. § 1441(b)(2); *see Jallad v. Madera*, 784 F. App'x 89, 91 n.2 (3d Cir. 2019).

The Third Circuit strictly adheres to the requirement under Section 1441(b)(2) that the defendant must be "properly joined and served" to trigger application of the forum-defendant rule. *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 151-54 (3d Cir. 2018); *see Munchel v. Wyeth LLC*, C.A. No. 12-906-LPS, 2012 WL 4050072, at *4 (D. Del. Sept. 11, 2012)

4

(explaining that, "by retaining the 'properly joined and served language,' the [2011] amendment [to Section 1441(b)] reinforces the conclusion that Congress intended for the plain language of the statute to be followed."). Thus, a defendant who would otherwise be precluded from removing an action under the forum-defendant rule may properly remove an action to federal court if that defendant files the notice of removal before it is served with the complaint. *Encompass*, 902 F.3d at 151-54; *see Higgins v. Novartis Pharms. Corp.*, C.A. No. 25-247-MN, 2025 WL 1397045, at *1 (D. Del. May 14, 2025); *Columbus Life Ins. Co. v. Wilmington Tr. Co.*, C.A. No. 20-744-MN-JLH, 2020 WL 9432924, at *2 (D. Del. Nov. 23, 2020). This exception to the forum-defendant rule is known as "snap removal." *Id.*

There is no dispute that Defendant filed the notice of removal prior to being served with the complaint in this matter. (D.I. 1 at ¶ 2; D.I. 8-1 at ¶ 5) Nonetheless, Plaintiffs contend that allowing Defendant's snap removal here "would undermine the purposes of the governing statute and yield a bizarre and absurd result." (D.I. 8 at 9-10, 14-16) Plaintiffs argue that they could not avoid snap removal in this case by serving Defendant quickly due to unavoidable delays caused by Delaware's service rules and technological advances allowing Defendant to monitor dockets electronically. (*Id.* at 11-12; D.I. 8-1 at ¶¶ 3-5) Plaintiffs cite to scholarly articles and out-of-circuit case authority regarding the public policy arguments against snap removal.[4] (D.I. 8 at 12-14)

---

[4] In support of their argument on fraudulent misjoinder, Plaintiffs rely on *In re Plavix Product Liability & Marketing Litigation*, 2014 WL 4954654 (D.N.J. Oct. 1, 2014). (D.I. 18 at 5) Plaintiffs do not mention that this case also addressed the issue of snap removal, "join[ing] the majority in finding that, so long as a properly joined forum defendant has not been served, the Removal Defendant's removal of these cases" was proper under "the plain and unambiguous language of § 1441(b)." *In re Plavix*, 2014 WL 4954654, at *5.

Plaintiffs' counsel raised nearly identical arguments in support of a motion for remand filed in *Higgins v. Novartis Pharms. Corp.*, C.A. No. 25-247-MN. *Compare* D.I. 8 at 9-17 *with Higgins v. Novartis Pharms. Corp.*, C.A. No. 25-247-MN, D.I. 13 at 9-18 (D. Del. Apr. 4, 2025). The *Higgins* case involves the same Defendant, the same counsel for Plaintiffs, and the same injury allegedly caused by the use of terbutaline to treat preterm labor in pregnant women. In a recent Memorandum Order denying the motion to remand in *Higgins*, the court rejected each of the arguments presented by Plaintiffs in this case regarding the forum-defendant rule and snap removal. *See Higgins v. Novartis Pharms. Corp.*, C.A. No.25-247-MN, 2025 WL 1397045, at *1-2 (D. Del. May 14, 2025). Relying on binding Third Circuit precedent, the court rejected "Plaintiffs' policy appeals regarding the technological advantages of electronic dockets and resulting overuse of snap removal by defendants," explaining that "[i]t is for Congress, not this Court, to revise the statute." *Id.* at *2 (citing *Encompass*, 902 F.3d at 154).

Plaintiffs argue that "this Court has discretion to rule differently than Judge Noreika [in *Higgins*] on the snap removal issue." (D.I. 18 at 4, 9-10) Regardless, the court is bound by Third Circuit precedent. *See Higgins*, 2025 WL 1397045 at *2 n.2 (explaining that the court "cannot and will not reject the Third Circuit's snap removal interpretation of section 1441(b)(2)." (internal citations and quotation marks omitted)). In *Encompass*, the Third Circuit characterized the "properly joined and served" requirement of Section 1441(b)(2) as "a bright-line rule" in support of its conclusion that the defendant could "use pre-service machinations to remove a case that it otherwise could not[.]" *Encompass*, 902 F.3d at 153-54.

Plaintiffs attempt to distinguish *Encompass* by arguing that they did not have time to serve Defendant before removal occurred in the instant case. (D.I. 18 at 8) But the Third Circuit expressly acknowledged "the concern that technological advances since enactment of the forum

defendant rule now permit litigants to monitor dockets electronically, potentially giving defendants an advantage in a race-to-the-courthouse removal scenario[,]" ultimately concluding that "the legislature is well-suited to address the issue." *Encompass*, 902 F.3d at 153 n.4. In accordance with the plain language of Section 1441(b)(2), the Third Circuit's precedential holding in *Encompass*, and the persuasive analysis in *Higgins*, Defendant's removal of this case to federal court is proper.

Plaintiffs' reliance on the Ninth Circuit's decision in *Casola v. Dexcom, Inc.* is also unpersuasive. 98 F.4th 947, 962 (9th Cir. 2024). In *Casola*, the question before the court was whether the defendant could remove an action before the complaint could be considered filed under state law. *Id.* In contrast, the question before the court in this case is whether pre-service removal is permissible after the complaint has been filed. Subsequent case authority citing *Casola* has recognized this distinction. *See Carazo Reyes v. Harbor Freight Tools USA, Inc.*, 2025 WL 1683163, at *3-4 (C.D. Cal. June 16, 2025) (distinguishing *Casola* on this basis).

## B. Diversity of Citizenship and Fraudulent Misjoinder

Plaintiffs next argue that remand is required because complete diversity of citizenship does not exist. (D.I. 8 at 17) There is no dispute that plaintiffs Laurie Boyle and Bridget Boyle are citizens of New Jersey (the "New Jersey Plaintiffs"), or that Defendant maintains its principal place of business in New Jersey. (D.I. 1 at ¶¶ 26-27) Consequently, "complete diversity of citizenship is lacking on the face of the complaint." *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, 2012 WL 1118780, at *2 (D.N.J. Apr. 3, 2012). Defendant responds that the citizenship of the New Jersey Plaintiffs should not prevent the court from exercising diversity jurisdiction because the New Jersey Plaintiffs were fraudulently misjoined. (D.I. 17 at 14)

7

The doctrine of fraudulent misjoinder operates as an exception to the complete diversity rule. *Breitner v. Merck & Co., Inc.*, 2019 WL 316026, at *2 (D.N.J. Jan. 24, 2019). "Fraudulent misjoinder, otherwise known as 'procedural misjoinder[,]' 'refers to a situation where a plaintiff attempts to frustrate a defendant's right to remove by joining a non-diverse party in violation of the applicable joinder rule.'" *Id.* (quoting *Saviour v. Stavropoulos*, 2015 WL 6810856, at *6 (E.D. Pa. Nov. 5, 2015)). To establish fraudulent misjoinder, the court must find that: (1) the claims have been misjoined; and (2) the misjoinder was egregious. *In re Fosamax*, 2012 WL 1118780, at *3. "Misjoinder . . . occurs when there is no common question of law or fact or when . . . the events that give rise to the plaintiff's claims against defendant[ ] do not stem from the same transaction." *DirecTV, Inc. v. Leto*, 467 F.3d 842, 844 (3d Cir. 2006). The defendant, as the removing party, bears the burden of persuasion to show fraudulent misjoinder intended to destroy diversity jurisdiction. *Pa. Employees Benefit Trust Fund v. Eli Lilly & Co., Inc.*, 2007 WL 2916195, at *7 (E.D. Pa. Oct. 5, 2007).

The Third Circuit has not expressly endorsed the doctrine of fraudulent misjoinder. However, it declined an opportunity to expressly reject the doctrine in an appeal of the District of New Jersey's decision in *In re Fosamax*. There, the Third Circuit observed that the trial court had "disregard[ed], for purposes of jurisdiction, the citizenship of fraudulently joined parties," noted that this portion of the ruling was not challenged on appeal, and stated that "we see no reason to disturb it." *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, 751 F.3d 150, 156 n.10 (3d Cir. 2014). Plaintiffs contend that the court should not apply the doctrine absent direction from the Third Circuit, while Defendant cites numerous district court cases applying the doctrine in the context of pharmaceutical personal injury cases. (D.I. 1 at ¶¶ 34, 36; D.I. 17 at 18-20; D.I. 18 at 5)

8

The fraudulent misjoinder doctrine is often applied in pharmaceutical cases because "complicated causation questions pervade drug product liability claims, which often require divergent questions of law and fact." *Breitner*, 2019 WL 316026, at *4 (stating that plaintiffs' injuries in such cases may depend on variables, such as "exposure to the drug, the patient's physical state at the time of taking the drug, and a host of other known and unknown factors that must be considered at trial with respect to each individual plaintiff."); *see In re Fosamax*, 2012 WL 1118780, at *3, 5 (explaining that "the doctrine is particularly relevant to large pharmaceutical product liability actions."). Even if the plaintiffs take the same drug and suffer similar injuries, the doctrine of fraudulent misjoinder may apply due to factual distinctions regarding the timing, source, and dosage of the drug and/or the nature or severity of the alleged injury. *Id.*

The court follows the analysis in *Breitner*, which engaged in a two-step determination of: (1) whether the claims are misjoined under Federal Rule of Civil Procedure 20; and (2) whether the joinder is egregious. *Breitner*, 2019 WL 316026, at *3 (citing *In re Fosamax*, 2012 WL 1118780). Under the first prong, Plaintiffs' joinder of the New Jersey Plaintiffs is improper pursuant to Federal Rule of Civil Procedure 20, which governs permissive joinder.[5] Fed. R. Civ. P. 20. Rule 20(a)(1) permits the joinder of plaintiffs when their claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). Claims arise out of the same transaction or occurrence when they "share an aggregate of operative facts." *3G*

---

[5] Plaintiffs state that the Third Circuit has not resolved the issue of whether the federal rules or state rules apply to permissive joinder. (D.I. 8 at 19) The parties cite both sets of rules in their briefing, and the federal and state rules on this issue are substantially similar. (D.I. 8 at 19; D.I. 17 at 15; D.I. 1 at ¶ 32); *compare* Fed. R. Civ. P. 20(a) *with* Del. Super. Ct. R. Civ. P. 20(a).

*Licensing, S.A. v. HTC Corp.*, C.A. No. 17-83-GBW, 2023 WL 34553, at *2 (D. Del. Jan. 4, 2023) (quoting *In re EMC Corp.*, 677 F.3d at 1359).

Here, the complaint alleges that Plaintiffs took terbutaline during pregnancy and the children exposed to terbutaline during their mothers' pregnancies subsequently suffered from autism. (D.I. 1-1 at ¶ 38) However, other averments highlight factual differences among Plaintiffs' treatment and injuries. Plaintiffs' claims "differ according to various factors including (1) the alleged product ingested, (2) the dosage amounts and frequency, (3) the dates of the alleged ingestion, (4) the duration of the alleged ingestion, and (5) the location of the alleged purchase and ingestion." *In re Propecia (Finasteride) Prod. Liab. Litig.*, 2013 WL 3729570, at *12 (E.D.N.Y. May 17, 2013). The complaint alleges that Plaintiffs began taking terbutaline in different years between 1995 and 2008, at different stages of their pregnancies ranging from 13 to 34 weeks, and across eight different states. (D.I. 1-1 at ¶ 38) The nature of the resultant injuries also differs. Mothers face different injuries than their autistic children, and the complaint confirms that the severity of the children's injuries is not uniform. (*Id.*)

Other pleaded allegations are vague on details. The complaint names at least three manufacturers who marketed terbutaline during the relevant period without specifying which specific terbutaline product was taken by Plaintiffs. (*Id.* at ¶¶ 31-33, 38); *see In re Propecia*, 2013 WL 3729570, at *12 (finding fraudulent misjoinder where "[n]one of the plaintiffs specify the particular finasteride product—whether Propecia, Proscar, or some generic product that they or their spouses consumed."). As a result, there are no pleaded averments directly establishing a relationship between the New Jersey Plaintiffs and Defendant. *See In re Propecia*, 2013 WL 3729570, at *14 ("[I]t is unclear what relationship the plaintiffs have to the Merck defendants since they have not alleged that they purchased products manufactured by them."). The

complaint also lacks specifics on the prescribed dosage and length of treatment, instead stating that Plaintiffs took terbutaline "as prescribed for a period of weeks." (D.I. 1-1 at ¶ 38) In similar circumstances, courts have held that the plaintiffs' injuries did not arise out of the same transaction or occurrence and presented distinct questions of law and fact. *See Breitner*, 2019 WL 316026, at *4; *In re Propecia*, 2013 WL 3729570, at *14.

Joinder of the New Jersey Plaintiffs is also egregious under the second prong of the analysis. The complaint includes two non-diverse Plaintiffs out of twenty total Plaintiffs, and it does not specifically allege that the non-diverse New Jersey Plaintiffs were exposed to terbutaline manufactured, distributed, or sold by the New Jersey Defendant. (D.I. 1-1 at ¶ 38) This suggests the complaint "was structured in a way to defeat diversity jurisdiction." *Breitner*, 2019 WL 316026, at *4; *see also In re Fosamax*, 2012 WL 1118780, at *5 (finding egregiousness where the pleaded allegations were "exceptionally vague"). Consequently, I recommend that the court disregard the citizenship of the fraudulently misjoined New Jersey Plaintiffs, sever the non-diverse New Jersey Plaintiffs from this action pursuant to Rule 21, and remand their claims to the Delaware Superior Court. *See* Fed. R. Civ. P. 21; *In re Fosamax*, 2012 WL 1118780, at *6.

Plaintiffs cite only one case within the Third Circuit that arises in the context of pharmaceutical product liability. *See In re Plavix Prod. Liab. & Mktg. Litig.*, 2014 WL 4954654, at *12-14 (D.N.J. Oct. 1, 2014). In that case, the court acknowledged its "substantial concerns" with the way the plaintiffs pleaded their complaints, "joining [ ] numerous potentially non-related claims" involving plaintiffs "from different states who likely have no connection to each other but for their ingestion of Plavix[.]" *Id.* at *14. The court expressed its view that, "in pharmaceutical cases like the ones here, courts should be steadfast in guarding against plaintiffs'

attempts at forum shopping by employing questionable procedural mechanisms, including misjoinder of claims." *Id.* The court's ultimate determination to grant the motion to remand cases that had at least one non-diverse plaintiff was not based on a finding of common issues of law or fact. Instead, the court's ruling was based on the lack of Third Circuit precedent endorsing the doctrine of fraudulent misjoinder and deference to the state court on the issue. *Id.* More recent case authority applying the doctrine of fraudulent misjoinder has rejected the approach taken in *In re Plavix*. *See Breitner*, 2019 WL 316026, at *3.

Other cases cited by Plaintiffs arising outside of the pharmaceutical product liability context are also unpersuasive. In *Mesa Computer Utilities, Inc. v. Western Union Computer Utilities, Inc.*, the court determined that the joinder requirements of Rule 20(a) were satisfied even though the claims were predicated on different transactions or occurrences because all plaintiffs were directly affected by the defendant's alleged acts of fraud. 67 F.R.D. 634, 637 (D. Del. 1975). However, the plaintiffs' claims arose in the context of contractual franchise agreements and did not raise the unique variations in injuries or questions of causation that complicate drug product liability claims. The District of New Jersey's decision in *In re Paulsboro Derailment Cases* is also distinguishable because all plaintiffs in that case experienced the same chemical spill event at the same time. 2014 WL 197818, at *4 (D.N.J. Jan. 13, 2014). The court expressly acknowledged the fraudulent misjoinder doctrine's "particular relevance in the pharmaceutical context." *Id.*

## IV. CONCLUSION

For the reasons discussed above, I recommend that the court DENY Plaintiffs' motion for remand and issue an Order in the form set forth below:

## ORDER

At Wilmington this __th day of _____, 2025, IT IS ORDERED that:

1. The Report and Recommendation issued on July 11, 2025 is **ADOPTED**.

2. Plaintiffs' motion for remand is **DENIED**.

3. Plaintiffs Laurie Boyle and Bridget Boyle are severed from this action, and their cases are remanded to the Superior Court of Delaware, for lack of subject matter jurisdiction.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: July 11, 2025

_____
Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE